# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| HEATHER N. CARTY, ) <br>    Plaintiff ) <br> ) <br> ) <br> ) <br> **CAROLYN W. COLVIN,** ) <br>  **Acting Commissioner of Social Security,** ) <br>    Defendant ) | Civil Action No. 2:14cv00031 <br> **MEMORANDUM OPINION** <br><br> By: PAMELA MEADE SARGENT <br> United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Heather N. Carty, ("Carty"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the

case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Carty protectively filed her application for SSI on September 22, 2010,[1] alleging disability as of December 1, 2008, due to "nerves" and hepatitis C. (Record, ("R."), at 163-66, 171, 177, 181.) The claims were denied initially and on reconsideration. (R. at 74-78, 83, 86-88, 90-92.) Carty then requested a hearing before an administrative law judge, ("ALJ"). (R. at 93.) A hearing was held on January 28, 2013, at which Carty was represented by counsel. (R. at 28-51.)

By decision dated February 5, 2013, the ALJ denied Carty's claim. (R. at 11-22.) The ALJ found that Carty had not engaged in substantial gainful activity since September 22, 2010, the date of her application. (R. at 13.) The ALJ determined that the medical evidence established that Carty suffered from impairments, including hepatitis C, hypertension, obesity, lumbar pain and an anxiety disorder, but she found that Carty's physical and mental impairments were not severe. (R. at 13-21.) Therefore, the ALJ found that Carty was not under a disability as defined under the Act and was not eligible for benefits. (R. at 14, 21.) *See* 20 C.F.R. § 416.920(c) (2015).

After the ALJ issued her decision, Carty pursued her administrative appeals, (R. at 6), but the Appeals Council denied her request for review. (R. at 1-5.) Carty then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2015). The case is before this court on Carty's motion for summary judgment filed February

---

[1] It was noted that Carty protectively filed her SSI application on December 22, 2010, at Carty's hearing. (R. at 34.)

-2-

13, 2015, and the Commissioner's motion for summary judgment filed March 19, 2015.

## II. Facts[2]

Carty was born in 1985, (R. at 163), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). Carty has a tenth-grade education.[3] (R. at 31.) She has no work experience. (R. at 33-34.) Carty stated that she was unable to work because she had trouble being around people and being in closed spaces. (R. at 35.) She stated that the only medications that she took were Elavil and Neurontin. (R. at 35.) Carty stated that she was not interested in inpatient treatment, even if it would help her. (R. at 36.) She stated that she could not concentrate well enough to perform a simple job eight hours a day. (R. at 38.) Carty stated that she was diagnosed with post-traumatic stress disorder, ("PTSD"), as a result of the physical and mental abuse she endured as a child. (R. at 38-39.) She stated that she experienced one to two panic attacks a week. (R. at 40.) Carty stated that her driver's license was suspended in 2004 due to driving under the influence. (R. at 44.) She stated that she stopped consuming alcoholic beverages in 2005 or 2006. (R. at 44.)

Mark Hileman, a vocational expert, also was present and testified at Carty's hearing. (R. at 50.) Hileman was asked to consider a hypothetical individual who had no exertional limitations, but who would be absent from work more than two

---

[2] Carty does not challenge the ALJ's finding with respect to her alleged physical impairments. Therefore, the discussion of the medical evidence will be limited to those records pertaining to Carty's mental health. Further, the undersigned's consideration of medical records is limited to those pertinent to the relevant time period of September 22, 2010, the protective filing date of Carty's SSI application, through February 5, 2013, the date of the ALJ's decision. To the extent that medical records pertaining to dates not pertinent to the relevant time period are contained herein, it is for clarity of the record.

[3] Carty stated on her Disability Report that she had an eleventh-grade education; however, she testified at her hearing that she completed the tenth grade. (R. at 31, 181.)

days a month due to anxiety or panic attacks. (R. at 50.) He stated that there would be no jobs available that an individual could perform should she be absent from work that much. (R. at 50.)

In rendering her decision, the ALJ reviewed records from Wise County Public Schools; Dr. Robert McGuffin, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Donald Williams, M.D., a state agency physician; Dr. Andrew Bockner, M.D., a state agency physician; Norwise OB GYN; Stone Mountain Health Services; B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist; Wise County Behavioral Health Services; and L. Andrew Steward, Ph.D., a licensed clinical psychologist. Carty's attorney also submitted medical records from Dr. Pema O. Bhutia, M.D., and Wise County Behavioral Health Services to the Appeals Council.[4]

In 2006, Carty was court ordered to attend moral reconation therapy, ("MRT"), at Wise County Behavioral Health Services after receiving a second underage possession of alcohol charge and public intoxication charge. (R. at 489.) In 2007, Carty was court ordered to participate in substance abuse counseling and anger management. (R. at 467-88.) On March 3, 2009, Carty was seen for depression and anxiety with panic attacks. (R. at 540.) James Kegley, M.S., diagnosed anxiety disorder, not otherwise specified; depressive disorder; and alcohol dependence, in remission. (R. at 540.) Carty's then-current Global Assessment of Functioning score, ("GAF"),[5] was assessed at 65.[6] (R. at 540.) On

---

[4] Since the Appeals Council considered and incorporated this additional evidence into the record in reaching its decision, (R. at 1-5), this court also must take these new findings into account when determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991).

[5] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC

-4-

March 13, 2009, Carty reported anxiety and post-traumatic issues. (R. at 522.) Carty reported that she was molested when she was 13 or 14 years old. (R. at 522.) In addition, Carty reported that her father was an alcoholic who verbally and emotionally abused her and physically abused her mother. (R. at 522.) She also reported that the father of her daughter was physically, verbally and emotionally abusive to her. (R. at 522.) Carty was diagnosed with PTSD; social phobia; alcohol abuse, in remission; and nicotine dependence. (R. at 524.) Her then-current GAF score was assessed at 50,[7] with her highest and lowest GAF score being 50 in the previous six months. (R. at 524.) On March 31, 2009, and April 16, 2009, it was noted that Carty was moderately depressed. (R. at 515-16.) In May and July 2009, Carty reported experiencing three to four panic attacks a month. (R. at 513-14.) She was found to be mildly to moderately depressed. (R. at 513-14.) On November 2, 2009, Carty reported that she continued to experience panic attacks; however, they were not as frequent. (R. at 512.) She reported that she had not consumed alcoholic beverages since July 2008. (R. at 512.) Her mood was mildly depressed. (R. at 512.) On December 2, 2009, Carty had a mildly depressed mood with congruent affect. (R. at 511.)

The record shows that during 2010 and 2011, Carty canceled the majority of her counseling sessions. (R. at 314-15, 317-30, 379-83, 385, 387, 389, 392, 417, 419-25, 429-30, 432-33, 435-36, 438-39.) In March and June 2010, Kegley reported that Carty was mildly depressed with congruent affect. (R. at 332, 335.)

---

AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[6] A GAF score of 61-70 indicates "[s]ome mild symptoms ... OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well ...." DSM-IV at 32.

[7] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

On October 27, 2010, Carty reported severe depression and anxiety as a result of her boyfriend being sent to jail and a close family member being diagnosed with stomach cancer. (R. at 316.) Kegley reported that Carty was moderately depressed with congruent affect. (R. at 316.) Carty was next seen on March 15, 2011, with complaints of panic attacks. (R. at 444.) She stated that her panic attacks increased when she was around a lot of people. (R. at 444.) Kegley reported that Carty's mood ranged from mildly to moderately depressed with congruent affect. (R. at 444.) On April 18, 2011, Carty reported that she was attempting to get her driver's license reinstated. (R. at 440.) Kegley reported that Carty was severely depressed with tearfulness and a congruent affect. (R. at 440.) On December 13, 2011, Kegley reported that Carty was moderately to severely depressed. (R. at 509.)

On January 12, 2012, Carty reported a fear of crowds. (R. at 508.) Kegley reported that Carty was moderately depressed and tearful with congruent affect. (R. at 508.) On February 1, 2012, Carty reported that she recently had to leave a store because "it was so overwhelming." (R. at 507.) Kegley reported that Carty was mildly to moderately depressed with congruent affect. (R. at 507.) On March 19, 2012, Kegley noted that Carty was mildly to moderately depressed with congruent affect. (R. at 506.) On June 28, 2012, Carty reported experiencing flashbacks and nightmares surrounding the physical abuse that her mother endured from Carty's father. (R. at 503.) She stated that she recently visited the county fair and Dollywood and enjoyed herself. (R. at 503.) Kegley reported that Carty's mood was moderately depressed with congruent affect. (R. at 503.) In August and December 2012, Kegley reported that Carty was moderately to severely depressed. (R. at 583, 586, 588, 631, 633.) In January, February, March and April 2013, Kegley reported that Carty was mildly to moderately depressed. (R. at 591, 625-27, 629.) In July and August 2013, Carty was moderately to severely depressed. (R. at 623-24.) In October 2013, Carty was mildly depressed. (R. at 621.)

-6-

On January 26, 2009, Carty began seeing Misty L. Bendall, F.N.P., a family nurse practitioner at Stone Mountain Health Services, for anxiety and panic attacks. (R. at 462-63.) Bendall diagnosed Carty with generalized anxiety disorder. (R. at 463.) On February 25, 2009, Carty reported that BuSpar was not helping her symptoms of anxiety, and she requested Xanax. (R. at 459.) On May 14, 2009, Carty reported to Bendall that she had been receiving counseling at Wise County Behavioral Health Services and that her counselor wanted her to start either Klonopin or Xanax. (R. at 455.) Bendall noted that no documentation had been received from Carty's counselor indicating that she needed to be prescribed these medications. (R. at 455.) Carty reported that she participated in counseling every two weeks and that it was helping. (R. at 455.) On May 22, 2009, Bendall noted that Carty was very argumentative regarding her anxiety medication. (R. at 456.) Carty stated that she wanted the medication and that she would have to find someone who would prescribe it. (R. at 456.) It was noted that Carty had an extensive history of narcotic abuse. (R. at 456.) On August 19, 2009, Carty had a positive pregnancy test, and she was advised to discontinue all medications. (R. at 451.)

On February 15, 2010, Carty reported that her anxiety symptoms had increased. (R. at 300.) She stated that she had been "clean" for the previous office visits "as far as drug screens." (R. at 300.) Bendall noted that Carty was "very nervous." (R. at 300.) Carty picked at her fingers and trembled. (R. at 300.) In March 2010, Bendall diagnosed hypertension, dysthymic disorder, long-term use of medications and hepatitis C. (R. at 294, 297, 305.) On May 14, 2010, Carty was oriented, and her memory, mood, affect, judgment and insight were all reported as normal. (R. at 289.) On June 15, 2010, Carty reported that Celexa was helpful with her anxiety symptoms. (R. at 285.) It was noted that Carty failed a urine drug screening. (R. at 285.) The drug screening showed Valium, Kolonopin, Darvocet

and Xanax. (R. at 285.) Carty denied drug dependence. (R. at 285.) Carty was oriented and had normal memory, mood, affect, judgment and insight. (R. at 286.) She was assessed with benzodiazepine dependence, depression and hypertension. (R. at 287.) On March 8, 2011, it was noted that Carty was released from the Appalachian Clinic for failed urine drug screens. (R. at 340.) On November 2, 2011, Carty was oriented, and her memory, mood, affect, judgment and insight were all reported as normal. (R. at 554.) In May, July and September 2012, Carty's affect was described as flat, and her memory, mood, affect, judgment and insight were all reported as normal. (R. at 543-44, 548, 562.)

On April 15, 2011, B. Wayne Lanthorn, Ph.D., a licensed clinical psychologist, evaluated Carty at the request of Disability Determination Services. (R. at 408-13.) Carty stated that she began using alcohol at the age of 12 and, at "her peak," she was consuming a 12-pack of beer per day. (R. at 410.) She stated that she had been arrested for being drunk in public several times and had one driving under the influence conviction. (R. at 410.) Lanthorn reported that Carty's affect was appropriate within normal range of expression during the beginning of the session; however, she became somewhat histrionic and cried off and on throughout the remainder of the session. (R. at 411.) He noted that Carty exhibited no signs of delusional thinking or any clinical evidence of ongoing psychotic processes. (R. at 411.) Lanthorn diagnosed mild anxiety disorder, not otherwise specified, and personality disorder, not otherwise specified, with histrionic and dependent features. (R. at 412.) He assessed Carty's then-current GAF score at 65 to 70. (R. at 412.)

Lanthorn deemed Carty's psychological prognosis to be fair. (R. at 412.) He opined that Carty was functioning in the low average range of intellectual functioning. (R. at 412.) He opined that Carty displayed no problems with

-8-

immediate, short-term or long-term memory and that her concentration and communication skills appeared to be reasonably good. (R. at 412.) Lanthorn opined that, from a psychological point of view, Carty had no substantial limitations that would prevent her from sustaining gainful employment. (R. at 413.)

On May 5, 2011, Joseph Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding that Carty suffered from an anxiety-related disorder and a personality disorder. (R. at 58.) He opined that Carty was mildly restricted in her ability to perform her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 58.) Leizer opined that Carty had not experienced repeated episodes of decompensation of extended duration. (R. at 58.) Leizer opined that Carty did not appear to have a severe mental impairment and that she would be able to perform the mental requirements of all levels of work. (R. at 58.)

On September 14, 2011, Dr. Andrew Bockner, M.D., a state agency physician, completed a PRTF, indicating that Carty suffered from an anxiety-related disorder and a personality disorder. (R. at 68.) He opined that Carty was mildly restricted in her ability to perform her activities of daily living, in maintaining social functioning and in maintaining concentration, persistence or pace. (R. at 68.) Dr. Bockner opined that Carty had not experienced repeated episodes of decompensation of extended duration. (R. at 68.) Dr. Bockner opined that Carty did not appear to have a severe mental impairment and that she would be able to perform the mental requirements of all levels of work. (R. at 68.)

On December 6, 2012, L. Andrew Steward, Ph.D., a licensed clinical psychologist, evaluated Carty at the request of Carty's attorney. (R. at 571-78.)

-9-

The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Carty obtained a perceptual reasoning score of 75, a verbal comprehension score of 83 and a full-scale IQ score of 71. (R. at 575.) The Beck Anxiety Inventory, ("BAI"), showed severe anxiety and the Beck Depression Inventory-II, ("BDI-II"), showed severe depression. (R. at 575.) Steward diagnosed major depressive disorder, recurrent, severe, without psychotic features; generalized anxiety disorder; panic disorder without agoraphobia; and borderline intellectual functioning. (R. at 578.) He assessed Carty's then-current GAF score at 51.[8] (R. at 578.) Steward noted that Carty was functioning overall at the lowest end of the borderline intellectual functioning range, with her processing speed composite score falling in the mild mental retardation range. (R. at 578.) He reported that this appeared to be a lifelong condition based upon her educational, employment, behavioral and test performances. (R. at 578.)

Steward completed a mental assessment, indicating that Carty was seriously limited in her ability to follow work rules, to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 579-81.) He opined that Carty had no useful ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention and concentration, to understand, remember and carry out complex and detailed instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 579-80.) He found that Carty would be absent from work more than two days a month. (R. at 581.)

---

[8] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms … OR moderate difficulty in social, occupational, or school functioning…." DSM-IV at 32.

On April 24, 2013, Carty saw Dr. Pema O. Bhutia, M.D. (R. at 606-11.) Dr. Bhutia noted that Carty wore a baseball cap and read a book throughout the entire visit. (R. at 606.) Carty made no eye contact. (R. at 606.) Carty's mother accompanied her and asked Dr. Bhutia to prescribe Xanax for Carty. (R. at 606.) Carty had an irritable mood and appropriate affect. (R. at 608.) Dr. Bhutia diagnosed depressive disorder, not elsewhere classified, and social phobia. (R. at 608.) On July 2, 2013, Carty's boyfriend reported that Carty had been taking Wellbutrin for a month, but it was not working. (R. at 598.) Carty later admitted that she had not even picked up the prescription for Wellbutrin. (R. at 598.) Carty's boyfriend also stated that he had to take Carty to the emergency room, and Carty told him to "hush." (R. at 598.) Carty refused to sign a medical release allowing Dr. Bhutia to review the emergency room records. (R. at 598.) Dr. Bhutia noted that Carty's mood was mildly anxious, and her affect was appropriate. (R. at 600.) On September 23, 2013, Carty's mother reported that Carty avoided social interactions and that she stayed "aloof." (R. at 594.) Carty complained of depression, anxiety and insomnia, which was helped with Elavil. (R. at 596.) Dr. Bhutia reported that Carty's mood was low, and she had an appropriate affect. (R. at 596.) Dr. Bhutia diagnosed depressive disorder, not otherwise specified, social phobia and insomnia. (R. at 596.) It was noted that Carty insisted on taking benzodiazepines. (R. at 596.) Dr. Bhutia noted that Carty failed urine drug screens in the past, therefore, making her a high risk for medication abuse. (R. at 594, 596.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2015); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a

-11-

Case 2:14-cv-00031-PMS   Document 17   Filed 10/16/15   Page 11 of 16   Pageid#: 706

severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2015).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 1382c(a)(3)(A)-(B) (West 2003 & Supp. 2014); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Carty argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-6.) As noted above, Carty does not challenge the ALJ's findings as to her physical impairments or her physical residual functional capacity.

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must

consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 416.927(c), if she sufficiently explains her rationale and if the record supports her findings.

Carty argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 4-6.) The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 416.921(a) (2015). Basic work-related mental activities include understanding, remembering and carrying out simple job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.921(b). The Fourth Circuit held in *Evans v. Heckler*, that "'"[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (citations omitted)). Although the Social Security regulations do

-13-

not define the term "significant," this court previously has held that it must give the word its commonly accepted meanings, among which are, "having a meaning" and "deserving to be considered." *Townsend v. Heckler*, 581 F. Supp. 157, 159 (W.D. Va. 1983). In *Townsend*, the court also noted that the antonym of "significant" is "meaningless." 581 F. Supp. at 159.

Here, the record is replete with evidence that Carty's mental impairments are not "meaningless" as they relate to her performance of basic work-related mental functions. For instance, Carty's counselor, Kegley, treated Carty for an anxiety disorder, a depressive disorder, PTSD and social phobia from March 2009 through October 2013. (R. at 524, 540, 621.) During this time, Kegley routinely found Carty to be moderately or severely depressed. (R. at 316, 440, 444, 503, 506-09, 514-16, 583, 586, 588, 591, 623-25, 627, 629, 631, 633.) In March 2009, Kegley assessed Carty's then-current GAF score at 50, indicating serious impairments in social, occupational or school functioning. (R. at 524.) The record shows that family nurse practitioner Bendall diagnosed Carty with a generalized anxiety disorder in January 2009, (R. at 463), and a dysthymic disorder in March 2010. (R. at 297.)

In addition, on December 6, 2012, Carty saw consultative psychological examiner Steward, who diagnosed major depressive disorder, recurrent, severe without psychotic features; generalized anxiety disorder; panic disorder without agoraphobia; and borderline intellectual functioning, and he placed Carty's then-current GAF score at 51, indicating serious impairments. (R. at 578.) Steward noted that Carty was functioning overall at the lowest end of the borderline intellectual functioning range, with her processing speed composite score falling in the mild mental retardation range. (R. at 578.) This finding also is consistent with Lanthorn's finding that Carty was functioning in the low average range of

-14-

intellectual functioning. (R. at 412, 578.) Steward reported that this appeared to be a lifelong condition based upon her educational, employment, behavioral and test performances. (R. at 578.)

Steward completed a mental assessment, indicating that Carty was seriously limited in her ability to follow work rules, to understand, remember and carry out simple job instructions and to maintain personal appearance. (R. at 579-81.) He opined that Carty had no useful ability to relate to co-workers, to deal with the public, to use judgment, to interact with supervisors, to deal with work stresses, to function independently, to maintain attention and concentration, to understand, remember and carry out complex and detailed instructions, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 579-80.) He found that Carty would be absent from work more than two days a month. (R. at 581.)

Also, Carty routinely complained of experiencing panic attacks while being in a crowd of people, and she was diagnosed with social phobia by Kegley and Dr. Bhutia. (R. at 524, 596, 608.) Furthermore, in April and September 2013, Dr. Bhutia diagnosed depressive disorder, not elsewhere classified. (R. at 596, 608.) While the state agency psychologists found in 2011 that Carty did not suffer from a severe mental impairment, I note that they did not have Steward's and Dr. Bhutia's reports before them, as these assessments were completed in 2012 and 2013. (R. at 58, 68, 571-78, 596, 608.)

It is for all of these reasons that I do not find that substantial evidence supports the ALJ's finding that Carty did not suffer from a severe mental impairment. Therefore, I do not find that substantial evidence exists to support the

ALJ's finding that Carty was not disabled.  An appropriate order and judgment will be entered.

DATED:     October 16, 2015.

/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE